## Case No. 986.

### BARKER v. BARKER'S ASSIGNEE.

### BARKER v. SMITH et al.

[2 Woods, 87;[1] 12 N. B. R. 474; 2 Amer. Law T. Rep. (N. S.) 386.]

Circuit Court, D. Louisiana. Nov. Term, 1874.

BANKRUPTCY — FRAUDULENT CONVEYANCE BY BANKRUPT — CONCEALMENT OF CONVEYANCE — WHO MAY IMPEACH—CREDITOR WITHOUT LIEN—ASSIGNEE IN BANKRUPTCY.

1. As a general rule, a voluntary conveyance, made by a grantor in easy circumstances and in no pecuniary strait. to his wife or children, cannot be impeached, because voluntary. at the instance of creditors who became such long after the execution of the conveyance.

2. To impeach a conveyance made under such circumstances, it must be shown to have been fraudulent, or made with a view to protect the property conveyed from future debts.

3. A deed not at first fraudulent may become so by being concealed from the public, so that the grantor gets credit by reason of his supposed ownership of the property conveyed.
[See Warner v. Norton, 20 How. (61 U. S.) 448.]

4. The Code of Louisiana gives no effect to an unregistered act of alienation as against bona fide purchasers or creditors.

5. But a general creditor of the grantor cannot proceed to set aside a conveyance, either really or constructively fraudulent. unless he has a lien on the property conveyed, or has reduced his claim to judgment.
[Cited in Re Gurney, Case No. 5,873.]

6. But this rule does not apply to an assignee in bankruptcy. The adjudication of bankruptcy arrests the proceedings of creditors to obtain judgments. The assignee may therefore proceed to impeach a deed of the bankrupt as fraudulent, although the creditors have not reduced their claims to judgment, and although they have no specific lien upon the property conveyed.
[Cited in Re Gurney, Case No. 5,873; Re Werner. Id. 17,416; Miller v. Jones, Case No. 9,575; Lloyd v. Hoo Sue, Id. 8,432; Platt v. Preston, Id. 11,219.]
[See Pratt v. Curtis, Case No. 11,375; Cady v. Whaling, Id. 2,285; Allen v. Massey, Id. 231; In re Dunkerson, Id. 4,156; Smith v. Ely, Id. 13,044.]

[Appeal from the district court of the United States for the district of Louisiana.]

In bankruptcy. This was a bill in equity filed in the district court [by Abraham Barker

against the assignee of Jacob Barker, a bankrupt, Samuel Smith, and others, to set aside a sale by the assignee to the defendant Smith,] and brought to this court by appeal. The case was submitted to the circuit court upon the pleadings and evidence for final decree. [Bill dismissed.]

John A. Campbell, for complainant.
A. Micou, for defendant.

WOODS, Circuit Judge. The facts of the case are these: On the 30th of September, 1857, Jacob Barker was seized in fee and was in possession of a certain parcel of real estate in the city of New Orleans. On that day, by his deed of that date, he conveyed the real estate to his son, Abraham Barker, the complainant. Although the deed was absolute on its face, yet the conveyance was made to Abraham Barker in trust for Elizabeth Barker, wife of Jacob Barker, and mother of complainant. The consideration, as claimed by complainant. was $8,000, made up by the cancellation of two notes for $1,300 each, with interest, made by Jacob Barker and held by Elizabeth Barker, the payee, by the payment by the trustee for Jacob Barker of a balance due Barker Brothers, and a credit for the remainder in favor of Jacob Barker on the books of the trustee.

The deed was not recorded until the 14th of July, 1869. In the meantime, about the year 1861, Mrs. Elizabeth Barker died, having provided by her last will that the whole income of her estate, or so much thereof as might be necessary, and, if required, the principal, or some part thereof. should be devoted to the support of the said Jacob, and such members of the family as might, in his discretion. require it.

Both before and after the death of Mrs. Barker, Jacob Barker collected the rents and paid the taxes upon the property, he being a resident of New Orleans, where the property was situated, and Abraham Barker, the trustee, a resident of Philadelphia.

In June, 1867, Jacob Barker was adjudged a bankrupt by the United States district court of Louisiana, and placed upon his schedules, through inadvertence and mistake, as he testifies, the parcel of real estate conveyed to complainant in 1857, and afterwards. it was sold by the assignee to the defendant, Samuel Smith.

Jacob Barker, for many years prior to the date of his deed to Abraham Barker, had been a prominent business man and banker in New Orleans, of great reputed wealth, and so continued until the date of his bankruptcy in 1867.

The prayer of the bill is that the sale to Smith may be set aside and the property reconveyed to the complainant, or that he may receive the proceeds of the sale made to Smith.

Samuel Smith, one of the defendants, files an answer, in which he says he is willing to

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

abide by the order of the court in the premises, and if the court shall decide that the sale to him should be annulled, consents thereto on the repayment to him of the purchase money.

The assignee defends against the bill on two grounds: (1) Because the deed to Abraham Barker was simulated and intended to defraud the creditors of Jacob Barker; and (2) Because the failure to record the deed rendered it null and void; and as the assignee was appointed before the deed was recorded, he can, as the representative of the creditors, insist on the invalidity of the deed. These defenses present the points that demand our attention.

First. Is the deed of September 30, 1857, void because executed in fraud of creditors? There is not a word of evidence in the record to show that in 1857, Jacob Barker had a creditor in the world. On the other hand, all the facts in the case are consistent with the theory that, being a man of large means and independent fortune, in no pecuniary strait, and wishing to put in the hands of a trustee trust property held by him for his wife, he made the deed in question. As all the parties were members of the same family, it was not thought necessary to transact the business with the formality and precision usually employed when the transaction is between strangers. Had it really been the purpose of Jacob Barker to defraud his creditors, he would have been careful to see that the deed was executed and recorded in strict compliance with law. But it is not necessary to argue the question of fraudulent intent against creditors, because there is, as just stated, no proof that there were any creditors when the deed was executed and delivered.

Can those who were not creditors at that time, but who became so years afterwards, complain of the deed as fraudulent? It seems clear that generally they cannot. The doctrine established by the supreme court of the United States is, that a voluntary conveyance made by a person not indebted at the time, in favor of his wife or children, cannot be impeached by subsequent creditors on the ground of its being voluntary. It must be shown to have been fraudulent or made with a view to future debts. Sexton v. Wheaton, 8 Wheat. [21 U. S.] 229; Hinde v. Longworth, 11 Wheat. [24 U. S.] 199. See, also, Bennett v. Bedford Bank, 11 Mass. 421.

There is nothing in the record which tends in the slightest degree to show that any of the creditors of Jacob Barker, who are represented by the assignee, were such at the date of the deed to Abraham Barker, nor that the purpose of that conveyance was to defraud any of his present creditors.

If the present creditors have any right to complain, it is not because the deed of 1857 was made in actual fraud of those to whom Jacob Barker was then indebted, but because it was not recorded, and because they

have given him credit on the strength of his presumed ownership of the property conveyed thereby.

A deed, not at first fraudulent, may become so by being concealed, because by its concealment, persons may be induced to give credit to the grantor. Sands v. Hildreth, 2 Johns. Ch. 35; Hildeburn v. Brown, 17 B. Mon. 779.

A deed concealed from the public, the grantor remaining in possession and acquiring credit on the strength of his supposed ownership of the property, is fraudulent. Worseley v. De Mattos, 1 Burrows, 467; Hungerford v. Earle, 2 Vern. 261; Leukener v. Freeman, Freem. Ch. 236; Constantine v. Twelves, 29 Ala. 607.

This brings up the second question, whether the failure to record the deed avoids it as to creditors.

The Code of Louisiana gives no effect to acts of alienation as against creditors or bona fide purchasers, unless they have been regularly registered. This is conceded; but counsel for complainant says that the creditors, as against whom an unrecorded deed is void, are those only who have obtained a judgment which created a lien or privilege on the land, and not general creditors. Whether the provision of the law is thus limited is the precise question now for solution.

The general rule is, that a creditor cannot proceed to set aside a conveyance of real estate, either really or constructively fraudulent, unless he has a lien thereon, or has reduced his claim to judgment, and the fraudulent conveyance is an obstacle to a sale on execution. Jones v. Green, 1 Wall. [68 U. S.] 330; Colman v. Croker, 1 Ves. Jr. 160; Brinkerhoff v. Brown, 4 Johns. Ch. 671.[2]

Conceding that a general creditor having no lien or judgment could not file a bill to set aside as void an unrecorded conveyance of real estate, and to subject the property to the payment of his debt, does this rule apply to an assignee in bankruptcy?

In the case of Carr v. Hilton, [Case No. 2,436,] a bill in equity was sustained by an assignee to subject property conveyed by the bankrupt in fraud of his creditors to administration for their benefit. In many other cases this has been done.

It would appear that an adjudication of bankruptcy removes the necessity for a lien or judgment before a bill can be filed to subject the property fraudulently conveyed, or when the transfer is for other reasons invalid. If the rule were otherwise, then no property conveyed by a bankrupt in fraud of his creditors, or by any void or invalid conveyance, unless the creditors had reduced their claims to judgment, could be subjected by the assignee in bankruptcy to the payment of debts. For after an adjudication of

---

[2] [See, also, Day v. Washburn, 23 How. (64 U. S.) 309.]

bankruptcy, no creditor whose debt is provable is allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the bankrupt's discharge shall be determined. Bankrupt Act, [March 2, 1867, c. 176, 14 Stat. 526,] § 21.

The question under consideration was decided by Woodruff, circuit judge, in Re Leland, [Case No. 8,234,] in the case of an unrecorded mortgage of chattels. The learned judge says: "It is claimed, because the mortgage is valid without being properly filed as against the bankrupts, it is, therefore, good as against their assignee in bankruptcy, and that no creditor but a judgment creditor can impeach or deny its validity.

"The proceedings in bankruptcy arrest the ordinary proceedings of creditors to · obtain judgments, and thereby to secure an appropriation of the debtor's property to their use, and the assignee in bankruptcy represents them. He is trustee for them, and whatever right they might assert, if they had obtained judgments, he may, for their benefit, assert, whether it be to set aside conveyances by the bankrupts which are fraudulent and void as against creditors, or which are otherwise as against them invalid."

The case stands thus: Jacob Barker, in 1857, was seized of the real estate in dispute. He attempted to convey it by a deed which his grantee failed to record, and he remained in possession. This failure to record the deed made it inoperative as against subsequent purchasers and creditors. So far as their rights are involved, the title still remained in Jacob Barker until his bankruptcy in 1867. By the adjudication, the rights of the creditors were vested in the assignee. The want of judgments in their favor is supplied by the adjudication of bankruptcy, which authorizes the assignee to file a bill to subject the property to administration, just as if he were a judgment or lien creditor. But the property has been delivered to him without suit, and its proceeds are in his hands for distribution. If it is rightfully thus, if under the circumstances of this case by his bill in equity, he could have subjected the property, then it follows, his rights are superior to the rights of the grantee of the unrecorded deed to the property, and that the bill of the latter to set up his claim is without equity.

The bill must therefore be dismissed.